UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

v.

SUZANNE BROWN                                       No. 20-cv-170-JL

MEMORANDUM OF LAW IN SUPPORT OF AMENDED MOTION
UNDER 28 U.S.C. § 2255 BY A PERSON IN CUSTODY

## I.     Introduction and Summary of Argument

It was not until after Suzanne Brown met with the grant administrator on June 28, 2011 that she discovered the grant administrator gave her incorrect advice about accounting for the federal grant she administered to help local farmers.  After that meeting, Brown, who has an MBA and was a business professor, researched the federal regulations and found that the proper accounting method for the grant was the accrual method of accounting.

Under accrual accounting, as opposed to cash accounting, income and deductions are generally recognized when they are incurred, rather than when they are actually paid.  The form used to report grant disbursements, referred to as SF-270, has a box where the grantee can check off "accrual" or "cash" to designate the accounting method used to complete the form.

When she met with the grant administrator, Brown was given a prefilled SF-270 form with the "cash" box checked off.  In an effort to follow both the instructions of the grant administrator <u>and</u> the federal regulations, Brown used the prefilled SF-270 form with the "cash" box checked off and used the accrual method of accounting to complete the rest of the form.

Using the accrual method of accounting, Brown calculated and reported expenses that she had incurred, such as the salaries of employees working for the grantee. When the grant administrator later learned that the employees had not been paid, she mistakenly believed that Brown had made false statements to a federal agency in the SF-270 forms. This mistaken belief was based upon an assumption that Brown was reporting actual cash payouts as opposed to reporting incurred obligations under the accrual method of accounting.

Prior to trial, Brown told her lawyers that they needed to understand the federal regulations relating to the accrual method of accounting to competently represent her at trial. Brown's efforts to explain this complicated issue included providing copies of these federal regulations to her attorneys. Although Brown's trial counsel made several attempts to introduce these regulations at trial, these attempts were unsuccessful due to either a lack of preparation or a lack of understanding of these regulations. Consequently, Brown's lawyers were not able to explain the accrual method of accounting to the jurors which would have established that Brown's statements were not false and that she lacked the requisite intent to be guilty of the indictments.

The disjointed defense started out arguing that Brown had "good intentions" and "did the best she could." The defense had to shift gears in their closing, conceding that Brown was "sophisticated" only after the government argued "she's a smart woman…[who] knew what she was doing." Suzanne Brown is a smart woman who knew what she was doing. It was the grant administrator, Anne Getchell, who did not know what she was doing and trial counsel's failure to introduce the evidence that established this fact was devastating to Brown's defense. Counsel also erred in failing to argue that the forms, regulations and instructions that Brown completed were fundamentally ambiguous and that her statements were literally true.

Trial counsel's errors were compounded by their failure to object to the government's improper propensity arguments that included an assertion that "[f]rom the very beginning of this whole thing, [Brown] was telling lies…so is it surprising that having told lies to get the grant, her next thing is to submit false statements, each and every month, to actually get the money." Trial counsel also erred in failing to object to the government's improper appeal to the jurors as taxpayers when they argued that Brown was motivated by an intent to get "easy money…to get the taxpayers' easy money."

During a previous hearing on this matter, trial counsel did not offer any valid tactical reason for these errors. Therefore, there is a reasonable probability, sufficient to undermine confidence in the outcome, that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

## II.    Factual Background and Evidence at Trial

Over the holidays leading up to her jury trial in January of 2017, Suzanne Brown inundated her lawyers with materials. Doc. 74: 22. Brown tried to explain to her lawyers that these materials, which were federal regulations, would prove that she was not guilty of making false statements to the USDA. Doc. 74: 71.

Specifically, Brown knew that certain federal regulations would prove her innocence as to allegations that she made false statements when she submitted forms to the USDA related to federal grant money. Doc. 74: 74-75. Brown was fearful that if the jury did not actually see the regulations in question, they would not believe that she used the accrual method of accounting, as mandated by the regulations. *Id*. In basic terms, as applied to these facts, accrual accounting means that the forms Brown submitted to the USDA reported expenditures incurred, as opposed to representing actual expenditures paid, as alleged by the government. Doc. 74: 74-75. If the

regulations Brown provided to her attorneys had been admitted as full exhibits at trial, it would have corroborated her defense that she did not make false statements and that she did not have the intent to make false statements. *Id*.

Instead of presenting the defense urged by their client, and corroborated by federal regulations, trial counsel's defense was that Brown's actions "were not a willful violation of the law, [and while her actions] may have been inconsistent with regulations…she was doing the best she could with what she understood to be her obligations." Doc. 74: 14.

Brown was prejudiced by her lawyers' defense as the government easily dispensed with this theory in three ways.  The government first presented the testimony of Anne Getchell who stated that she reviewed the grant agreement with Brown "line by line" and that she reviewed the documents associated with the grant "completely."  Doc. 39: 58.  Getchell also testified that the way Brown filled out the grant forms meant that Brown was representing "that the money had been spent."  Doc. 39: 79.

Secondly, the government cross-examined Brown on the fact that she was a graduate of Annapolis, had an MBA from Pepperdine, and taught business at the college level.  Doc. 41: 25-26.  The government drove this point home in their closing arguments when they observed, "she's a smart woman…[who] knew what she was doing."  Doc. 45:84.

Thirdly, the government portrayed Brown as a scheming person intent on stealing money from taxpayers when they argued in closing that "[f]rom the very beginning of this whole thing, she was telling lies" and that it was not "surprising that having told lies to get the grant, [Brown's] next thing [was] to submit false statements each and every month" to get "easy money" from the "taxpayers."  Doc. 45: 74-82.

Trial counsel made several attempts to introduce the documents Brown asked them to introduce, but these attempts failed because counsel either did not lay the proper foundations or counsel was not prepared with legal arguments as to the admissibility and relevance of these documents. Specifically, the defense sought to introduce Exhibits H (id) and K (id) through Anne Getchell. Doc. 43: 89-90.

Exhibit H (id) was a federal regulation governing Rural Business Enterprise Grants (RBEG), and it was referred to in several other exhibits as 1942-G or RD-1942-G.[1] *See* Attachment 1. While Getchell conceded that regulation 1942-G was mentioned repeatedly in the grant paperwork, she expressed unfamiliarity with the specifics of the document:

 Q. You certainly were familiar with the RB instruction 1942-G, correct?

A. Correct. I'd have to look at that, but if that's what it is, yes. Correct.

Q. Well, you included that and reviewed that portion, Section B, with Suzanne as part of this process –

A. Okay.

Q. -- correct?

A. Correct.

Doc. 43:89.

If trial counsel had succeeded in making Exhibit H (id) a full exhibit, it would have established that "financial reporting [for a RBEG] grant will be on an accrual basis." Attachment 1, at 42. Trial counsel did not argue that this exhibit was not hearsay, as it was not an assertion by a person.[2] Counsel did not argue that it was admissible as a publication by a public authority.[3] Counsel also did not ask the court to take judicial notice of the exhibit as it was a

---

[1] Regulations 1942-G is refenced in Trial Exhibit 4, pg. 2 & 4 and in Trial Exhibit 5, pg. 4 as controlling the terms of the grant agreement. *See* Attachment 2 and Attachment 3.
[2] Fed. R. Evid. 801(a) and 801(c)(2).
[3] Fed. R. Evid. 902(5).

federal regulation.[4]  Trial counsel also did not seek to introduce this exhibit during Brown's

testimony.  *See* Doc. 41: 3-91; Doc. 45: 3-62.

Trial counsel was equally unsuccessful in their attempts to introduce through Getchell

Exhibit K (id), another document Brown asked them to introduce as it stated:

> **Accrued expenditures** means the charges incurred by the recipient during a given period
> requiring the provision of funds for: (1) goods and other tangible property received; (2)
> services provided by employees, contractors, subrecipients, and other payees; and (3)
> other amounts becoming owed under programs for which no current services or
> performance is required.

> **Accrued income** means the sum of: (1) earnings during a given period from (i) services
> performed by the recipient, and (ii) goods and other tangible property delivered to
> purchasers, and (2) amounts becoming owed to the recipient for which no current
> services or performance is required by the recipient.

> Attachment 4, Tr. Exh. K (id).

Trial counsel did not seek to introduce Exhibit K (id) through Brown, who would have

testified that this document guided her understanding of the correct method of completing SF-

270 forms.  At a post-conviction hearing, Brown testified that "the exhibits A-110,[5] A-102,

1942-G,[6] 1951-O, none of those were brought into the purview of the jury…it's a very technical

case, I understand that, but I think we could have helped them understand that what I did…"

Doc. 74: 74-75.  As they failed to do with Exhibit H (id), trial counsel did not seek to make

Exhibit K (id) a full exhibit by arguing that this exhibit was not hearsay, as it was not an

assertion by a person.  Counsel also did not argue that it was admissible as a publication by a

public authority, nor did they ask the court to take judicial notice of the exhibit as it was a federal

regulation.  Doc. 43: 90-93.  Trial counsel also did not seek to introduce this exhibit during

Brown's testimony.  *See* Doc. 41: 3-91; Doc. 45: 3-62.

---

[4] Fed. R. Evid. 201(b).
[5] A-110 refers to Exhibit K (id) which is titled OMB Circular A-110 (Attachment 4).
[6] 1942-G refers to Exhibit H (id)(Attachment 1).

When trial counsel was asked about this exhibit at post-conviction hearing, he stated that "[his] best recollection [was that I]  tried to get it in through Anne Getchell…but it never got into evidence."  Doc. 74: 18.  Trial counsel offered, "[if] the question is why didn't I try to put it in through Suzanne Brown…I don't have an answer."  *Id*.  Post-trial testimony by trial counsel suggests he did not fully understand Brown's proposed defense, as he stated, "I think that Suzanne thought that she was using a cash method but that she had to check accrual.  That's probably not right, but that's the best I can give you."  Doc. 74:13.

Trial counsel also failed to notice that in government Exhibit 3, there was evidence corroborating Brown's assertion that she used the accrual method of accounting, per the rules and regulations applicable to the RBEG grant.  *See* Attachment 5.  Government Exhibit 3 was titled "Grant Agreement."  On page 7 of this document, which was a full[7] exhibit, is states that "financial reporting will be done on an accrual basis."  *Id*. at 7.  Trial counsel never questioned Getchell about this part of Exhibit 3.  *See* Doc. 39: 31-85; Doc. 43: 3-135; Doc. 46: 3-38.  Trial counsel never displayed this section of Exhibit 3 to the jury or asked Brown about accrual accounting.  *See* Doc. 41: 3-91; Doc. 45: 3-62.

There was one exhibit that Brown asked her attorneys to introduce that did become an exhibit and that was Exhibit P.  During the cross-examination of Getchell, counsel for Brown introduced Exhibit P which was a SF-270 form with notes on it.  Doc. 43: 105; Attachment 6.  Getchell agreed that Exhibit P was a blank SF-270 form that was used as a sample to go over Brown's filing obligations under the grant.  *Id*.  Getchell also agreed that the form that was given to Brown had two of the boxes "pre-filled."  Doc. 43: 106.  Counsel elicited testimony that in box #1 of the SF-270 form, the word "reimbursement" was prefilled on the sample.  *Id.*  Getchell

---

[7] *See* Doc. 39: 60.

agreed that box #2 on trial Exhibit P, where there is a choice between the words, "cash" or

"accrual," the word "cash" was prefilled on the sample form.  *Id*.  Getchell could not remember

if she had a conversation with Brown about the difference between reimbursement and cash.

Doc. 43:108.  This testimony was different from Getchell's earlier testimony on direct where she

said that it was Brown who checked of the box that said "cash."  Doc. 39: 79.

Later in the trial, counsel also asked Brown about the SF-270 form and, more

specifically, box #2 of the sample SF-270 form that was trial Exhibit P.  *See* Attachment 6.

Brown explained her understanding of box #2 and the sample SF-270 form:

> That would be the organization's method of accounting. So, kind of like most families.
> You get the cash in, you spend the cash, you keep track of where your cash goes. That's
> what I understood. Accrual is a lot of times bigger businesses will use that, and we
> certainly weren't a bigger business, being a small nonprofit.
>
> Doc. 47: 43-44.

Trial counsel did not ask Brown to further explain accrual v. cash accounting methods or

what type of accounting method she used to account for the grant money.  Doc. 47: 21-118; Doc.

41: 3-91.  At a post-conviction hearing, where she explained trial counsel's errors in not

introducing the exhibits regarding accrued accounting, Brown specifically referred to Exhibit P:

> [Trial counsel] were kind enough to put up Anne Getchell's training document that was
> preloaded[8] with cash.  I understood that grant to be an accrual grant even though the
> institute was doing accounting on a cash basis.  I read what it was supposed to have been,
> which was services performed by contractors and employees.
>
> Doc. 74: 71.

There is no evidence that trial counsel consulted with a financial expert to either explain

federal grants and/or the accounting methods relevant to this case.

---

[8] By "preloaded" with cash, Brown explained that in box #2 of SF-270, Getchell checked off
"cash" in the sample.

After the government's closing, where they referred to Brown as a "a smart woman," trial counsel had to concede Brown was "sophisticated," contrary to their defense that "she was doing the best she could." Doc. 45:84; Doc. 45: 100; Doc. 74:14. Trial counsel did not discuss accrual accounting in his closing argument. Doc. 45: 98-109. Trial counsel also did not otherwise attempt to explain that reporting incurred obligations, even though they had not been paid, was not only a legitimate accounting method, but was in fact <u>the</u> accounting method proscribed by RBEG regulations. Attachment 1. While trial counsel did refer to Exhibit P in passing during his closing, he did not explain that it was a form that was "prefilled" by Getchell with the boxes "reimbursement" and "cash" already checked off when Brown received the forms. Doc. 45:98.

The jury began deliberations on January 26, 2017. Later that day, the jury submitted a question in writing. The question asked, "define 'in-kind services.'" Doc. 48:2. The following record was made:

> The Court convened counsel in chambers and we talked about the question. The Court proposed a couple of different solutions, all of which were rejected. We discussed the possibility of an applicable definition from the regulatory scheme under which, or the grant providing scheme under which the defendant was operating. Counsel were not aware of any and weren't prepared to agree on one. Then the Court suggested just the possibility of a definition everyone could agree on, you know, from Black's Law Dictionary or something or the United States Code in some area, and again, there was no agreement to that approach. So, the Court fashioned the following answer and read it to counsel, and all counsel agreed to it, and I'll read it for the record now before handing it to the deputy clerk. So, again, the question, define in-kind services. The answer, quote, the legal definitions required to deliberate and render a verdict in this case are contained in the jury instructions the Court provided verbally and in writing. To define any other concept, you should rely on your best recollection of the evidence presented at trial, unquote.

Doc. 48: 2-3.

Defense counsel did not request that the jury be instructed consistent with the OMB Circular A-110, which was also trial Exhibit K (id):

**Third Party In-Kind Contributions** means the value of non-cash contributions provided by non-Federal third parties. Third party in-kind contributions may be in the form of real property, equipment, supplies and other expendable property, and the value of goods and services directly benefiting and specifically identifiable to the project or program. Attachment 4, at page 7.

Ms. Brown was not present for the chambers conference on this issue and later raised a concern about counsel's performance.

Although Brown was only charged with making false statements on the SF-270 forms, the government spent a substantial amount of its direct exam of Getchell attempting to prove that Brown had also made false statements to a government agency when she submitted the original applications for the grant money in question. Doc. 39: 37-78.

During closing, the government argued that Brown's application was "filled with lies" and that she "told lies from the beginning." Doc. 45: 79-81. The government further argued that it was not "surprising that having told lies to get the grant, [Brown's] next thing [was] to submit false statements each and every month" to get "easy money" from the "taxpayers." Doc. 45: 74-82.

## III.    ARGUMENT

This Court should vacate the conviction in this case as trial counsel committed numerous errors that were prejudicial to the defense including: 1) their failure to present evidence favorable to the accused, confront the evidence against the accused, failure to adequately cross-examine the state's witnesses, their failure to make appropriate legal arguments to facilitate the admissibility of evidence favorable to the accused and their failure to consult with a financial expert;  2) trial counsel also failed to make a motion to dismiss or motion for a judgment of acquittal arguing that the alleged false statements were in response to a fundamentally ambiguous question and/or the statements were literally true; 3) trial counsel failed to propose an

appropriate answer to the jury question; and 4) trial counsel failed to object to improper arguments made during the government's closing.

A. **Trial counsel committed numerous errors that were prejudicial to the defense including their failure to present evidence favorable to the accused, confront the evidence against the accused, failure to adequately cross-examine the state's witnesses, failure to make appropriate legal arguments to facilitate the admissibility of evidence favorable to the accused and their failure to consult with a financial expert.**

As this Court knows, there was post-conviction, pre-direct-appeal litigation on the issue of whether trial counsel was ineffective. *See* Doc. 68; Doc. 74; Doc. 102 and Doc. 104. At a post-conviction hearing in this case, the government conceded that the evidence trial counsel failed to introduce at trial would be relevant to Brown's "state of mind." Doc. 74: 68. This was a concession that the government was forced to make at the end of a hearing where trial counsel testified that they did not fully comprehend the significance of the regulations regarding accrual accounting. Doc. 74: 13. These admissions clearly establish the first prong of *Strickland* as counsel provided no tactical reason for limiting their review and investigation of the regulations in question. *Id.* Although trial counsel was not asked about consulting with an expert at trial, the record is devoid of any evidence that they consulted with an expert.

This Court need not extend the ordinary deference due to trial counsel's strategic decisions where counsel fails to thoroughly investigate or comprehend relevant facts. *See Wiggins v. Smith*, 539 U.S. 510, 528 (2003), citing *Strickland*, 466 U.S., at 690-691. After trial counsels' testimony at the February 1, 2018 hearing, the government was forced to shift their focus to the prejudice prong of *Strickland* as the testimony at the hearing established sufficient evidence to satisfy the performance prong. *Id.* Doc. 74: 68.

Any analysis of prejudice in this case must first begin with the very high burden of proof required to prove the offense of making a false statement under 18 U.S.C. §1001. The

government had to do more than merely prove that Brown knowingly made a false statement to a federal agency – they had to prove the she knowingly and <u>willfully</u> made a false statement. As this Court instructed the jury, the government had to prove beyond a reasonable doubt that Brown acted "with the knowledge that her conduct was, in a general sense, unlawful…[t]hat is, the defendant must have acted with a bad purpose to disobey or disregard the law." Doc. 45: 128.

The government portrayed Brown as a smart, intelligent woman who "knew what she was doing." Doc. 45: 84. Defense counsel, on the other hand, portrayed Brown as having "good intentions" and not "having significant knowledge of grants" prior to the grant being awarded in this case. Doc. 39: 24 and Doc. 45: 99. Trial counsel was ineffective in failing to mention accrual accounting in his closing. Doc. 45: 98-109. Trial counsel's efforts in his closing to portray Brown as inexperienced were undermined by the government's cross-examination of Brown on her business experience. Doc. 41: 25.

By contrast, if trial counsel had focused their defense on the accrual accounting issue, it would have portrayed Brown as the woman she was – a former marine and Annapolis graduate who taught business and organizational leadership. *Id.* A defense centered on accrual accounting would have aligned Brown's experience and background with her defense. She did not take the word of the federal employee as to how to complete the SF-270 form and instead went and read the regulations herself. Doc. 74: 71. When faced with a discrepancy between the instructions and the regulations, Brown attempted to both obey the instructions of Getchell and comply with the rules set forth in the regulations.

Trial counsel's cross-examination of Getchell was ineffective as counsel did not attack Getchell on her lack of knowledge as to the federal regulations that control these grants. If trial

counsel had adequately confronted Getchell about the fact that RBEG regulation 1942-G calls

for accrual accounting, it is likely that the trial would have ended in a different result.  The

petitioner submits an example of a mock cross-examination of Getchell that would have

adequately confronted the government's case and undermined the government's case.  *See*

Attachment 7.   This mock cross-examination demonstrates that an adequate cross-examination

could have laid the foundation to introduce exhibits H (id) and K (id) as full exhibits and

established that it was Getchell who got things wrong about the grant, including her belief that

Brown made false statements.

Brown herself explained how trial counsel's errors prejudiced her defense when she

stated at a post-conviction hearing that she tried to explain to her lawyers the importance of the

regulations to her defense because she feared she "was not going to be believed" unless the

regulations were shown to the jury.  Doc. 74: 74-75.

The record establishes that Brown has satisfied the prejudice prong of *Strickland* as she

has demonstrated that "there is reasonable probability, a probability sufficient to  undermine

confidence in the outcome, that, but for counsel's unprofessional errors, the result of [her trial]

would have been different." *Strickland*, 466 U.S., at 694.

While many of these errors, standing alone, might justify vacating Brown's convictions*,*

*Strickland* requires that this Court look at the totality of the evidence before the jury.  *Id.* at 695.

The cumulative effect of these errors clearly creates a reasonable probability that the result of the

trial would have been different but for counsel's cumulative errors*.  Id.* at 694.

Where trial counsel failed to introduce trial exhibits H (id) and K (id), the jury did not

hear evidence that would have demonstrated that the proper method for accounting under a

RBEG grant is the accrual method.  Further, these exhibits would have demonstrated that the SF-

270 forms submitted by Brown established: 1) that statements in question were not false; and 2) Brown did not knowingly and willfully make a false statement.  Therefore, this evidence would have negated two of the elements of the offense.

Ms. Brown presented a technical defense that required the introduction of specific documents and definitions. Ms. Brown's defense was not an emotional or easily understood defense but rather hinged on her, and the jury's, understanding of specific terms.  These terms, such as "accrual accounting," "cash accounting," "outlays," "in-kind services," "expenditures," all have specific meanings both under regulations covering federal grants and accounting principles.  Trial counsel's failure to define these terms through the use of federal regulations and/or an expert were devasting to the defense, especially where the government repeatedly implored the jurors to use their "common sense."  Doc. 45: 76; 79; 86; 87; 91; 111; 112. Common sense does not aid jurors in understanding complex federal regulations and accounting terms.  The defense had those definitions in its arsenal but failed to produce them for the jury.

Brown asks this Court to consider *United States v. Suddarth*, 795 Fed.Appx. 377, 379–80, 2019 WL 6033846, at *2 (C.A.6 (Tenn.), 2019) as authority that there is merit to relying on an accounting method as a defense to a false statement charge.  In *Suddarth*, the defendant argued that the government presented insufficient evidence on both the falsity and materiality elements on a charge of 18 U.S.C. § 1623 where the defendant stated "[t]hat all accounting for her business was done on a cash basis."  *Id*.  *Suddarth* held that the government failed to put forth *any* evidence that the defendant's company conducted its accounting other than on a cash basis.  The government had argued that "[t]rial testimony established that financial information *submitted* by Suddarth to representatives of Echo Global Logistics had been prepared on an accrual basis, not a cash basis." (citations omitted).  The court found this argument unpersuasive

because "just because a company uses one accounting method to prepare documents for closing doesn't necessarily mean that method is standard for the company." Additionally, Suddarth's affidavit explicitly stated that the submitted financial documents were prepared on an accrual basis. *United States v. Suddarth*, 795 Fed.Appx. 377, 380, 2019 WL 6033846, at *3 (C.A.6 (Tenn.), 2019).

Much of the analysis in *Suddarth* corroborates what Brown told this court during post-conviction hearings. She used cash accounting for NHAIF, but accrual accounting for grant reporting. While under one method of accounting a statement may appear to be false, under another method of accounting it may be true.

**B. Counsel was ineffective in failing to make a motion to dismiss or motion for a directed verdict on the grounds that the alleged false statements were in response to a fundamentally ambiguous question and/or the statements were literally true.**

Federal courts have generally recognized that special scrutiny must be applied to allegations of false sworn statements, like those against Brown, that depend upon the resolution of disputes over the meaning of specific testimony. In particular, the courts have recognized two distinct but closely related doctrines that foreclose prosecution, as a matter of law and based on *de novo* review by the court, of statements that either (i) are made in response to questions that are too vague and ambiguous to allow a jury to conduct a reasoned inquiry about the defendant's intended meaning; or (ii) are literally true under the court's independent interpretation of the testimony.

**1. The alleged false statements that are the subject of the indictments were in response to forms and regulations that were fundamentally ambiguous which precludes convictions on these charges.**

Federal courts have foreclosed prosecution, as a matter of law and based upon *de novo* review, when the alleged statements were made in response to questions or forms that are too fundamentally ambiguous to allow a jury to conduct a reasoned inquiry about the defendant's

intended meaning. *U.S. v. Mubayyid*, 658 F.3d 35, 61 (1st Cir. 2011). Fundamentally ambiguous questions cannot support a false statement charge because "it could never be said that one intended to answer such a question untruthfully. *Id*., quoting *United States v. Richardson*, 421 F.3d 17, 33 (1st Cir.2005) and *United States v. Finucan*, 708 F.2d 838, 848 (1st Cir.1983)) (internal quotation mark omitted).

A question is fundamentally ambiguous when it does not possess "a meaning about which men of ordinary intelligence could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony." *Lighte*, 782 F.2d at 375 (internal quotation marks omitted); citing *Farmer*, 137 F.3d at 1269; *see also United States v. Camper*, 384 F.3d 1073, 1076 (9th Cir. 2004) ("[a] question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understanding of its meaning" (internal quotation marks omitted)); *United States v. Shotts*, 145 F.3d 1298, 1298 n.19 (11th Cir. 1998) ("[t]he government may not send people to prison for failing to correctly guess the government's meaning").

A determination of whether a conviction is barred under this doctrine, requires an analysis of what type of accounting method was required for the completion of SF-270. The question then becomes whether SF-270 was asking the grant recipient to complete the form using the cash or accrual method of accounting or, as the petitioner asserts, the form was fundamentally ambiguous as to the accounting method to be used in completing the form.

Although there is a split of authority among the circuits[9] on the proper standard for reviewing a fundamentally ambiguous claim, *United States v. Race,* 632 F.2d 1114, 1116 (4th

---

[9] Many of these courts are explicit in stating that their review is "*de novo*" or "plenary." *See*, e.g., *United States v. Culliton*, 328 F.3d 1074, 1079 (9th Cir. 2003) (conducting a "*de novo* examination" of the challenged questions); *United States v. Serafini,* 167 F.3d 812, 819 (3d Cir. 1999) ("plenary" review of fundamental ambiguity claim); *United States v. Farmer*, 137 F.3d 1265, 1268 (10th Cir. 1998) (applying

Cir. 1980) also involves alleged false statements made when requesting reimbursement under a federally funded contract.  In *Race* the contract required the government to pay the contractor *per diem* allowances for its employees in accordance with a regulation that authorized such payments at a daily rate of $33. The defendants billed for the $33 reimbursement, even though each employee was actually paid only $25. The court of appeals reversed the convictions, finding that the contract, when read literally, permitted billing at the regulation rate, and that there had been no prior conduct that would allow a different interpretation of the contract.  *Id.*

The record in this case supports a finding that the forms and regulations that are the basis the false statement indictments against Brown are so fundamentally ambiguous that this Court should enter a judgment of acquittal.  *See U.S. v. Farmer*, 137 F.3d 1265, 1270 (10th Cir. 998).  At a minimum, this Court must find counsel ineffective in failing to raise this issue with supporting documentation at the time of trial.

In most cases, courts evaluate a claim alleging that a question is fundamentally ambiguous in a vacuum.  The evidence presented in this motion establishes that Anne Getchell did not fully comprehend the proper way to complete the federal grant form in this case.  Doc. 43: 89.  Trial counsel did not fully comprehend the significance of the regulations even after Brown gave them copies and tried to explain the regulations.  Doc. 73:13. Post-conviction, successor counsel found the accrual accounting issue "confusing."  Doc. 104: 4.  Even counsel

---

"a de novo standard of review" and resolving the issue "as a matter of law"); *United States v. Swindall*, 971 F.2d 1531, 1553 (11th Cir. 1992) ("Review is de novo."); *United States v. Manapat*, 928 F.2d 1097, 1099 (11th Cir. 1991) (conducting "plenary" review).

Other courts plainly engage in such independent consideration of the question, without expressly characterizing the standard of review.  *See*, e.g., *United States v. Richardson*, 421 F.3d 17, 33 (1st Cir. 2005); *United States v. DeZarn*, 157 F.3d 1042, 1048-49 (6th Cir. 1998); *United States v. Robbins*, 997 F.2d 390, 395 (8th Cir. 1993); *United States v. Yasak*, 884 F.2d 996, 1003 (7th Cir. 1989); *United States v. Lighte*, 782 F.2d 367, 375 (2d Cir. 1986).

for the government expressed that he found some of the accounting terms used at trial

"confusing."  See Doc. 41: 64.

> **2.     The conviction in this case cannot stand where the statements that are the subject of the convictions were literally true under the accrual method of accounting applicable to the federal grants at issue.**

Several federal circuits have held that the principle articulated in *U.S. v. Bronston*, 409

U.S. 353 (2012), that literal truth is a defense to perjury, holds true for convictions under 18

U.S.C. §1001.[10]  While this circuit has found the *Bronston* Court's holding to be narrow, there is

no tactical reason for trial counsel not to have raised this issue prior to or during trial.  *See Id*. at

353, 93 S.Ct. 595; *U.S. v. Richardson*, 421 F.3d 17, 32–33 (1st Cir. 2005).  Although this circuit

has suggested that the literal truth defense may be generally inapplicable to non-testimonial

statements, *see U.S. v. Boskic*, 545 F.3d 69, 92–93 (1st Cir. 2008), the unique facts of this case

required that competent counsel raise this issue either pre-trial, during trial or in a post-trial

motion.  Trial counsel did none of these things and therefore was ineffective.

> **C.  Trial counsel was ineffective in failing to object to improper evidence and arguments including 1) propensity evidence/prior bad acts evidence; 2) propensity arguments made during the closing arguments; and 3) improper "Golden Rule" arguments appealing to the jurors as taxpayers.**

In their closing, in addition to arguing that Brown made false statements in the SF-270

forms that were the subject of the indictments, the government also argued that she lied when she

---

[10] *See U.S. v. Good*, 326 F.3d 589, 592 (4th Cir. 2003)("The principle articulated in *Bronston* holds true for convictions under Section 1001 and in this case today."); *Mandanici*, 729 F.2d at 921 (2d Cir.1984); *United States v. Moses*, 94 F.3d 182, 188–89 (5th Cir.1996) ("We cannot uphold a conviction ... where the alleged statement forming the basis of a violation of section 1001 is true on its face."); *United States v. Vesaas*, 586 F.2d 101, 104 (8th Cir.1978) ("[A] prosecution for a false statement under § 1001 or under the perjury statutes cannot be based on an ambiguous question where the response may be literally and factually correct.") (citing *Bronston*, 409 U.S. at 362, 93 S.Ct. 595); *U.S. v. Baer*, 274 F.Supp.2d 778, 782 (E.D.Va.,2003)(Defendant's response to question 20 of the SIDA form was literally true, thus, the indictment charging a violation of section 1001 must be dismissed.)

submitted other forms to the RBEG/USDA. Specifically, the government argued that it was not "surprising that having told lies to get the grant, [Brown's] next thing [was] to submit false statements each and every month" to get "easy money" from the "taxpayers."  Doc. 45: 74-82. This theme combines evidence of uncharged misconduct, propensity evidence and improper appeals to the pecuniary interest of the jurors as taxpayers.  Trial counsel erred in not objecting this this argument.

While trial counsel's failure to object to any one of these arguments standing alone would amount to prejudice to a degree necessitating a new trial, cumulatively and without the benefit of a curative instruction, these errors meet the *Strickland* prejudice standard to establish ineffective assistance of counsel.

1. **The government improperly invited the jury to convict the petitioner based on propensity evidence when they argued "[f]rom the very beginning of this whole thing, she was telling lies…so is it surprising that having told lies to get the grant, her next thing is to submit false statements, each and every month, to actually get the money.  I would suggest to you that it's not."**

The government had to prove that the petitioner acted knowingly and willfully.  Doc. 45: 127-128.  To meet this burden, the government decided to rely on uncharged misconduct evidence.  Unlike the government's prosecutorial appeals to the jurors' interest in the case as taxpayers, which standing alone may not merit reversal where there is a strong government case, improper propensity arguments often merit reversal.  Trial counsel's failure to object to these arguments would have, at a minimum, resulted in a curative instruction.  Where there was no curative instruction to these prejudicial arguments, Brown is entitled to a new trial.  *See U.S. v. Richards*, 719 F. 3d 746, 764 (7th Cir. 2013).

The government may argue that there was no prejudice in counsel's errors as they would have admitted the evidence under 404(b) to prove motive, plan or absence of mistake.  There are

two problems with that argument.  The first being that the government did not file notice under

Fed. Rule of Evid. 404(b).  Secondly, if the court had admitted this evidence it would have been

admitted with a limiting instruction so that it would not be used as propensity evidence.

    **2.  Trial counsel was ineffective in failing to object the government's improper "Golden Rule" argument whereby they argued in closing that Brown's actions were motivated by an intent to get "easy money…to get the taxpayers' easy money."**

    When the government argued that the petitioner's motive was to get "easy money" from

"taxpayers," this was an improper appeal to the pecuniary interests of the jurors as taxpayers.

*U.S. v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007), citing *United States v. Blecker,* 657 F.2d 629,

636 (4th Cir.1981).  Remarks invoking the interests of jurors as taxpayers are universally viewed

as improper.  *U.S. v. Palma*, 473 F.3d 899, 902 (C.A.8 (Neb.),2007).  The reason for this is that

these type of appeals to "taxpayers" in cases involving monetary fraud on the government

amount to an "unprofessional and highly improper appeal to the passion and prejudices of the

juror[s]."  *U.S. v. Smyth*, 556 F.2d 1179, 1185 (5th Cir. 1977).

    Some courts have found that a timely curative instruction may cure an improper appeal to

the jurors as taxpayers.  *See U.S. v. Fahnbulleh*, 752 F.3d 470, 480; (D.C. Cir. 2014).  In

*Fahnbulleh*, a case involving fraud against a federal funded agency, defense counsel objected to

the use of the term "taxpayers" in the governments' closing arguments.  The trial judge sustained

the objection and gave a timely curative instruction advising the jurors to disregard the

comments about taxpayers.  *Id*. at 479.

    The unpublished case of *United States v. Ahmed* is also instructive as to the correct

course for competent counsel in a prosecution involving fraud and/or false statements involving

federal funding.  *United States v. Ahmed*, 2016 WL 3647686, at *11 (E.D.N.Y., 2016).  In

*Ahmed*, counsel for the defendant filed a motion in limine on this issue and the trial court issued

an order instructing the government not to use the word "taxpayers" in their case involving Medicaid fraud.

Competent counsel should have filed a motion in limine on this issue, as the defense attorney did in *Ahmed*.  There is such a lengthy and established body of law condemning appeals to jurors as taxpayers such that, at a minimum, trial counsel should have objected to the taxpayer reference and asked for an immediate curative instruction, as trial counsel did in *Fahnbulleh*. Trial counsel did neither.

**D.  Conclusion**

Due to trial counsels' errors, the jury in this case was left to sort through confusing and ambiguous federal regulations and accounting terms with their only guidance being the government's exhortations to use their "common sense."  These errors were only compounded when the government argued that Brown was a "manipulative" woman who was out to take the "taxpayers" money.  Doc. 45: 111.  The government mocked Brown when they argued, sarcastically, that "[e]verybody had it wrong…the only person who had it right was Suzanne Brown.  Really.  This is a sophisticated woman."  Doc. 45:85-86.  Suzanne Brown never got a chance to prove she was right because she never got a chance to present the evidence that would have proved she was right.

Respectfully submitted,

Suzanne Brown

By her attorneys,

Wadleigh, Starr & Peters, P.L.L.C.

Dated: April 3, 2020                              By: */s/* Donna J. Brown_____

Donna J. Brown,
95 Market Street
Manchester, NH 03101
(603) 669-4140

CERTIFICATION

I, Donna J. Brown, hereby certify that on this 3rd day of April 2020 a copy of the within motion
was e-filed to Seth Aframe of the US Attorney's Office.

/s/ Donna J. Brown
Donna J. Brown