UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Suzanne Brown            )
                         )
     v.                  )      1:20-cv-170-JL
                         )
United States of America )

UNITED STATES' OBJECTION TO DEFENDANT'S § 2255 MOTION

I.   INTRODUCTION.

A recent study reported that eighty-six percent of federal defendants who elect a jury trial are convicted. www.pewresearch.org/fact-tank/2019/06/11/only-2-of-federal-criminal-defendants-go-to-trial-and-most-who-do-are-found-guilty.  Presumably, many wish in hindsight that they had pursued a different strategy.  But that does not mean that defense counsel was ineffective for presenting an unsuccessful defense. Yet that is exactly what the defendant argues here.

At trial, the defendant testified, under oath, that she used a cash basis, not an accrual basis, when she prepared the SF-270 forms for reimbursement under the United States Department of Agriculture (USDA) grants that were at the center of this prosecution.  She testified further that the SF-270 instructions stated that, for reports made on a cash basis, a person could report the value of in-kind services as a basis for reimbursement under the grants, which is what she said that she did.  The jury rejected that argument, concluding that the grant conditions only permitted the defendant to seek reimbursement from the USDA for having made making actual cash expenditures.  Therefore, the jury found that the defendant falsely claimed she had followed grant conditions by the declarations she made on the SF-270 forms.

Even though the defendant testified under oath that she completed the SF-270s on a cash basis, she has now filed a § 2255 motion in which she seeks to recant her sworn testimony in the hopes of winning a new trial in which she can tell a different story. Apparently, based on an out-of-context reference to accrual accounting found in the grant agreement and the regulations governing the relevant grants, the defendant claims now, in direct contradiction to her trial testimony, that she reviewed these regulations at the beginning of the first grant and reported the SF-270 reimbursement requests on an accrual basis based on that review. And, she argues further that accrual accounting permitted her to seek reimbursement based on debts that she had incurred but had not yet paid.

A trial is not a contest; it is a search for the truth so that justice may be properly administered. United States v. Wilensky, 757 F.2d 594, 597 (3d Cir. 1985). The defendant testified that she completed the SF-270s on a cash basis and developed a defense around that testimony. Now she wants to testify that she actually submitted the SF-270s on an accrual basis to build a different defense. If an oath to tell the truth means anything, it must preclude the defendant from successfully arguing that her lawyers were constitutionally ineffective for failing to urge her to commit perjury so that the "facts" can fit her new theories.

II.     FACTS.

The facts of this case have been fully described in prior filings in this Court and rehearsed by the Court of Appeals in affirming the defendant's conviction. United States v. Brown, 945 F.3d 597 (1st Cir. 2019). Therefore, the government will only highlight those facts necessary to address the defendant's ineffective assistance of counsel argument.

The defendant applied for two United States Department of Agriculture grants under the Rural Business Enterprise Grant program. USDC-NH No. 16-cr-21-01-JL, Government's Trial

Exs. ("Ex.") 1 and 22.  As the defendant admitted at trial, the purpose of the grants was to reimburse salary paid to contractors by her New Hampshire Institute of Agriculture and Forestry. DN 41 at 47.  The letter of conditions agreed to by the defendant for the grants stated that the USDA "will disburse funds . . . on a reimbursement basis."  It further provided that requests for reimbursement shall be submitted to the USDA using the Standard Form 270, Request for Advance or Reimbursement and that "documentation will be required to evidence expenditures." Ex. 4.

Each month, the defendant submitted SF-270s seeking reimbursement under the grants. Ex. 7. After the first couple of months when she only submitted reports to justify her reimbursement requests, the USDA asked that she provide better documentation to evidence expenditures.  Ex. 50.  After that, the defendant submitted invoices for her contractors and pay stubs for herself and another employee. Exs. 27-29**.**  The defendant admitted at trial that in fact she had not actually paid her contractors or herself (DN 40 at 64, DN 46 at 81) and that the invoices were estimates prepared by her, even though the documents were electronically signed by the contractors. DN 41 at 73.  Neither contractor gave the defendant permission to create or submit these phony invoices, which stated much higher amounts than the invoices that contractors actually sent to the defendant.  DN 46 at 60-61.

The SF-270 required the defendant to declare whether she was seeking "advance" or "reimbursement." Ex 7-15, 27-29.  Consistent with the reimbursement nature of the grants, the defendant checked "reimbursement" every time. DN 41 at 23. The form also asked whether the defendant was making the request based on "cash" or "accrual" and the defendant always indicated "cash." Ex. 7. The defendant recorded that amount for which she sought reimbursement in the column labeled "outlays." Ex 7-15.  On each SF-270, the defendant certified that "to the

best of [her] knowledge and belief . . . all outlays were made in accordance with the grant conditions or other agreements and that payment is due and has not been previously paid." Id.

At trial, the government argued that the defendant lied every time she signed this certification because she had not complied with the grant conditions. According to the government, the defendant knew that the grant conditions required the defendant to make expenditures to the contractors first and then seek reimbursement from the USDA for the already-made payments since that was the language used in the letter of grant conditions executed by the defendant. DN 45 at 75-76.

The defendant offered a defense based on the instructions contained on the SF-270, particularly instruction 11a which provided the definition of "outlay." DN 41 at 63-64. In pertinent part, that section stated, "For requests prepared on a cash basis, outlays are the sum of the actual cash disbursements for goods and services . . . the value of in-kind contributions applied, and the amount of cash advances and payments made to contractors and subrecipients.[1]  Exs 7-15, 27-29.

At trial, on direct examination, the defendant justified her statements on the SF-270 based on the definition of outlay for entities using a cash basis.  In this regard, she testified as follows:

> [S]o for requests prepared on a cash basis, *as our accounting was cash*, outlays , which is what they were asking for . . . are the sum of actual cash disbursements, like what you pay in dollars for goods and services, the indirect expenses charged, for example, gas on the road, the value of in-kind contributions applied.  So the fair market value, what they would go for like if I mowed your lawn, how much would you pay me for that basically.  And the amount of cash advances and payments made to subcontractors and sub-recipients.  So, any other money that you spent for anybody else who either

---

[1] The definition also defined outlays when using an accrued expenditure basis: for requests prepared on an accrued expenditure basis, outlays are the sum of all actual cash disbursements, the amount of indirect expenses incurred, and the net increase (or decrease) in the amounts owed by the recipient for goods and other property received and for services performed by employees, contracts, subgrantees and other payees.

received goods or services from you that month.

DN 47 at 45.

The defendant went on to assert that the outlays she declared on the SF-270 were appropriate because she was declaring the in-kind contributions of her contractors, i.e., the amount she determined to represent the fair market value of her contractors' work. Id. at 44.

In closing argument, the defendant's counsel presented this in-kind-contribution defense to the jury:

> So she reads the form. It's pretty clear that if you look at the instructions on the back, what she read. . .You do what she did. You read instruction 11a. And what it talks about, it talks about how you're supposed to prepare these portions of the form. It's line 11a and b and it talks about not just cash admission, but also outlays, also applies to basically money owed.
>
> Outlays are the sum of actual cash disbursements for goods and services, the amount of indirect services charged, the value of in-kind contributions applied, and amount of cash advances and payments made to subcontractors and recipients.
>
> The certification -- read the certification. Lord knows she did, very carefully. This is what she signed. Her signature is all across the -- all 12 of these requests for reimbursement.
>
> I certify that to the best of my knowledge and belief, the data on the reverse are correct and that all outlays -- outlays, it doesn't say cash, it doesn't say payments out. It says outlays.
>
> She's sophisticated. She reads the 1941, she reads these regulations, and she understands outlays not just to be cash paid, but obligations incurred. She incurred obligations and she didn't pay those people. No question about it. But that does not mean that this was false at the time she applied.

DN 45 at 99-101.

The jury rejected the argument and convicted the defendant on all counts.

III. INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

   To prevail on an ineffective assistance of counsel claim, the defendant must meet a two-pronged test, namely that counsel acted in a deficient manner and this deficient conduct resulted in prejudice. Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009). Deficient performance means that counsel's performance fell below an objective standard of reasonableness under the circumstances. Id. Prejudice means that "but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." Id. This standard is necessarily difficult to meet, lest intrusive post-trial inquiry threaten the very adversary process the right to counsel is meant to serve. Harrington v. Richter, 562 U.S. 86, 105 (2011). The Supreme Court has rightly recognized that courts should exhibit caution in concluding that counsel acted in an unprofessional manner since "it is all too tempting to second guess counsel's assistance after conviction. . . . ." Harrington, 562 U.S. at 105.

IV. THE DEFENDANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS FAIL

   The defendant asserts that her trial counsel was ineffective in multiple ways. Her flagship claim is that her counsel should have presented a defense that she used the accrual basis to complete the SF-270 forms and that her declarations were appropriate under that accounting method. She also claims that counsel was ineffective for failing to move to dismiss or seek judgment of acquittal on the ground that the questions on which she lied were ambiguous and/or that her answers were literally true. Finally she says that her lawyer should have moved to prevent the government from introducing other documents related to the grants on which the she lied and should have sought to preclude the government from referring to the taxpayer's money during its argument.

6

A.	Accrual Accounting.

The defendant has focused her accrual argument on a reference to accrual accounting that she found at some point in the Rural Development 1942-g attachment (Def. Ex. H) and the grant agreement (Gov't Ex. 3), which copies the 1942-g language verbatim. That reference states that a grant recipient will "Provide a financial management system that will include accurate, current, and complete disclosure of the final result of each grant. Financial reporting will be on an accrual basis."

The reference to accrual accounting identified by the defendant relates to the "financial results of each grant." The discussion of seeking reimbursement under the grant by using the SF-270 form (the issue at trial) is provided in a separate section of 1942-g. That section provides that all disbursements under the grant must be on a reimbursement basis. And most importantly, the letter of conditions for the grant provides that all reimbursement requests using the SF-270 must be accompanied by documentation "to evidence expenditures." Expenditures means "the act of expending something, especially funds." www.dictionary.com.

It is certainly not clear from the materials cited by the defendant that a request for reimbursement under the SF-270 had to be reported on an accrual basis as the SF-270 is not the "final result" of the grant. And it is clear under the letter of grant conditions that reimbursement would be provided only after the grantee submitted an SF-270 and provided documentation showing expenditures.

But this parsing of language is really beside the point. The defendant decided to testify at trial and explained to the jury how she filled out the SF-270 forms. She clearly testified that she filled out the SF-270 using a cash basis. (DN 47 at 45). As a result, she claimed (based on the

definition of outlay for a cash basis submission) that she could declare the fair market value of her contractors work as an "in-kind contribution," even though she had not paid them.

That was her testimony under oath. But now the defendant says something entirely different: "It was not until [she] met with the grant administrator on June 28, 2011, that she discovered the grant administrator gave her incorrect advice about accounting for the federal grant she administered to help local farmers. After that meeting [she] . . . researched the federal regulations and found that the proper accounting method for the grant was the accrual method of accounting." Def. Mem. at 1.

That assertion is simply more of the defendant's repeated mendacity. The defendant testified at trial that she used the cash basis method to complete the SF-270s. Moreover, when initially confronted by the USDA about her failure to make expenditures before seeking reimbursement, she did not mention accrual accounting. She said instead that she paid her contractor, who then immediately agreed to return the money to the defendant's organization to support the organization's mission. In other words, she knew then she had to make expenditures to obtain reimbursement (as provided in the letter of conditions) and this was a way to finesse that requirement, i.e., she claimed that she gave the contractor the money and the contractor gave it right back.

Presumably, the defendant testified truthfully at trial when she said the SF-270s were "prepared on a cash basis, as our accounting was cash." DN 47 at 45. The defendant cannot possibly claim that her lawyers were ineffective for failing to present a defense that would have required the defendant to change her sworn testimony.

The Eleventh Circuit rejected a defendant's attempt to seek a new trial under similar circumstances when he claimed prejudice from an alleged Brady violation. In rejecting the

claim, the court wrote that the defendant's argument presupposes that in judging prejudice (or materiality in the Brady context), a court can ignore that the defendant testified under oath in a manner inconsistent with his subsequent argument. "In other words, the [defendant's] argument goes, we should wipe the slate clean of any tales previously told, and give the defendant another turn at the game. We reject such a 'sporting theory of justice.' United States v. Starrett, 55 F.3d 1525, 1556 (11th Cir. 1995).

The defendant cannot get another bite here merely because she located some stray reference to accrual accounting apparently after the trial since she did not mention accrual accounting until her § 2255 and new trial motions.  Moreover, even if she had presented this accrual theory at trial, it would have made no difference because she basically presented the same argument in a slightly different form.

 She testified that, under the in-kind contribution definition of outlay for a cash basis request, she could declare as outlays (and thus obtain for reimbursement) for the value of her contractors' services even though she had not paid them.  Her accrual accounting argument is essentially the same.  She says that accrual accounting allows her to declare for reimbursement debts that she has not yet paid.

At bottom, this case was about whether the defendant lied when she declared that she had followed the grant condition that she could only seek reimbursement based on documentation showing evidence of expenditures.  The government argued that the defendant faked that evidence of expenditures and therefore lied when she said that she was submitting outlays in accord with grant conditions that she provide of expenditures to get reimbursement.

The defendant countered the government's argument by claiming that she did not need to show actual expenditures on the ground that it was enough that she had incurred future financial

obligations. In light of the defendant's sworn testimony that she filled out the SF-270s on a cash basis, counsel effectively presented that argument by using the cash-basis definition of outlay contained in the SF-270 to argue that the defendant was allowed to seek reimbursement even though she had made no payments to her contractors. In short, counsel presented a competent defense premised on the defendant's testimony that the defendant submitted the SF-270s on a cash basis and argued the point clearly and forcefully in closing. There was no ineffective assistance of counsel and there was no prejudice.

      B.      <u>The Ambiguous Question/Truthful Answer Argument</u>.

The defendant contends that her counsel should have moved to dismiss or for judgment of acquittal on the ground that she could not be convicted of false statement based on a fatally ambiguous question or on a statement that was literally true. This ineffective assistance of counsel claim fails because neither argument would have been successful.

As the First Circuit explained, the evidence introduced at trial was sufficient to convict. <u>Brown</u>, 945 F.3d at 601. The defendant certified on each of the SF-270s that "all outlays were made in accordance with the grant conditions or other agreements." Ex. 3. The government argued that the letter of conditions set forth the condition that reimbursement required evidence of expenditures. The government then argued that the defendant faked the evidence of expenditures to claim falsely that she had made outlays "in accordance with grant conditions."

There is nothing ambiguous about the word expenditures; it means payment. And there was no dispute that the defendant failed to make payments to the contractors. The dispute at trial was whether the grant conditions required the defendant to make such advance payments in order to obtain USDA reimbursement. The parties argued that issue and the jury decided that the grant required the defendant to pay the contractors first in order to get reimbursement.

It was certainly rational for the jury to conclude that the letter of conditions set forth the grant requirements and that the defendant knowingly violated them (and thus lied on the certification) when she sought reimbursement without having made expenditures. Thus, the certification the defendant signed, stating that she followed grant conditions in submitting outlays, was not inherently ambiguous nor was the statement that she submitted outlays in accord with those conditions literally true. The conditions required evidence of expenditures and the defendant lied that she met that condition.

The defendant says that focus should be on the instructions contained in the SF-270, which permitted the use of accrual accounting that she says allows a person to declare unpaid debts. But the SF-270 is a "standardized government form." Brown, 945 F.3d at 599. The point of the form is that a person only used it in accord with the specific grant conditions for which she seeks advance or reimbursement. Thus, the grant conditions certification places a limitation on what can be declared as an outlay on the SF-270 form. Here, those conditions required evidence of expenditures prior to reimbursement. Since, the defendant did not make expenditures, she could not declare outlays for reimbursement on the SF-270 without violating her certification.

C.     Propensity Evidence.

The defendant claims that the government relied on improper propensity evidence by pointing to lies that the defendant told in the grant-application process. The defendant contends that her lawyer should have moved to exclude this evidence under Fed. R. Evid. 404(b).

Rule 404(b) evidence is admissible to show motive plan or lack of mistake. Moreover, evidence that is intrinsic to the crime is not governed by Rule 404(b). United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996). The defense was based, in part, on the notion that the defendant, in seeking reimbursement under the grants, was doing her best to understand

complicated rules and that any mistakes were accidental.  That defense had potential resonance given that the government had to prove the defendant willfully made the false statements on the SF-270s.

Evidence that the defendant set out from the beginning to get the grants on false terms undermined the defendant's claim that any false statements on the SF-270s were accidental.  At the outset of both grant processes, the defendant provided the USDA with false letters stating that she had set aside in a bank account, the Institute's share of payments under the grants.  That the defendant had not set aside that money was helpful to show that the defendant's statements on the SF-270 were part of her larger plan to get the reimbursement money without making the required payments to her contractors.  That evidence supported the government's view that the defendant's lies were willful misstatements, which were part of her overall intent to obtain USDA money to which she was not entitled.  In short, the defendant's lies related to the grants were not propensity evidence but were intrinsic to the offense insofar as they demonstrated her willfulness.

D.   Taxpayer Money Reference.

The defendant's final argument is that her counsel failed by not objecting to the government's reference to the "taxpayer's money."  To prevail on an ineffective assistance of counsel claim, the defendant must show that counsel's error probably led to a different outcome.

Even the defendant admits that the "government's prosecutorial appeal to the juror's interest in the case as taxpayer . . . may not merit reversal." Def. Mem. 19.  That is surely correct.  It was obvious to anyone that the money at issue was federal government grant money.  One should expect that most people understand that the federal government gets its money from the collection of taxes.  There is simply no basis to believe that, without the government's

reference to the taxpayer's money, the jury would have acquitted. This was a hard fought trial in which the points of dispute were clearly set forth to the jury. The jury's conclusion that the defendant willfully lied on the SF-270s was amply supported by the evidence. There is no basis for concluding that a rhetorical reference to the taxpayer's money made a difference in the outcome.

V.      CONCLUSION.

The defendant was properly convicted after a fair trial in which she was ably represented. This Court should deny the defendant's § 2255 motion, deny a certificate of appealability and set a date for the defendant to report to the Bureau of Prisons serve her sentence.

Dated: May 14, 2020

                                          Respectfully submitted,
                                          SCOTT W. MURRAY
                                          United States Attorney

                                          By: /s/ Seth R. Aframe
                                          Seth R. Aframe, AUSA
                                          53 Pleasant Street, 4th Floor
                                          Concord, NH 03301
                                          (603) 225-1552
                                          seth.aframe@usdoj.gov