UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Suzanne Brown

v.                                    Civil No. 1:20-cv-170-JL

United States of America

**MEMORANDUM ORDER**

Petitioner Suzanne Brown, proceeding pro se, has filed a "motion for judicial recusal or disqualification retroactive to September 1, 2020" seeking to have the undersigned judge removed from this case and to vacate all orders issued after September 1, 2020, including the court's judgment denying her petition under 28 U.S.C. § 2255.[1]  As detailed below, the motion is denied.

I.     **Background**

The court traced the long procedural history of this collateral challenge to the petitioner-defendant's 2017 felony convictions in its Procedural Order of February 3, 2021 (see doc. no. 13) and will not repeat all of that history here.  To provide context for the petitioner's recusal motion, however, the court highlights certain important dates and events.

Petitioner was indicted on February 10, 2016, convicted by a jury on January 26, 2017, and had her conviction affirmed on appeal on December 20, 2019.  See United States of America v. Brown, 945 F.3d 597 (1st Cir. 2019).  She filed her original motion to vacate her sentence

---

[1] See Motion for Recusal (doc. 37).  Petitioner also requests a "three-judge panel" to review her recusal motion, but has not provided any authority for that request.  Petitioner is not entitled to have a panel of three district court judges review her recusal motion.  See 28 U.S.C. § 2284 (allowing for three-judge panel review in circumstances not present here).

under § 2255 in January 2020.[2]  After requesting and receiving court-appointed counsel, she filed an amended motion to vacate in April 2020.[3]

The court held an evidentiary hearing on the motion over two days in September 2020. The court then held a third hearing and oral argument on the motion in February 2021 and issued a lengthy (40-page transcript) oral order denying the motion at that hearing.[4]  Petitioner appealed the court's order and judgment in March 2021.

The First Circuit Court of Appeals denied the petitioner's request for a certificate of appealability in November 2021.[5]  A month later, the petitioner filed a motion for judicial recusal in this case.  The court denied the motion as premature as the petitioner was still represented by counsel at the time she filed her motion.[6]  Petitioner attempted to appeal that order to the First Circuit, but the Court of Appeals dismissed the appeal for lack of jurisdiction.[7]

After the court granted petitioner's counsel's motion to withdraw, she filed the present pro se motion for recusal, along with an affidavit and "certification of good faith."[8]  The United States Attorney objects.[9]  While the petitioner's recusal motion was pending, a panel of the

---

[2] Doc. no. 1.

[3] Doc. no. 10.

[4] See Endorsed Order dated February 12, 2021.  The court also declined to issue a Certificate of Appealability.  See Endorsed Order dated February 16, 2021.

[5] See Nov. 15, 2021 Judgment in First Cir. Appeal No. 21-1265.

[6] See Endorsed Order dated December 17, 2021.

[7] See March 16, 2022 Judgment in First Cir. Appeal No. 21-2020.

[8] See doc. nos. 37-38.

[9] See doc. no. 40.  The government offers no substantive argument in response to the petitioner's recusal motion other than to label it "desperate and belated."  The court can see that the government's patience for this litigation has long run out.  Due to the rigorous standards of

active judges of the First Circuit denied her petition for rehearing en banc of the denial of her request for a certificate of appealability.[10]

## II.  Analysis

Petitioner seeks the court's recusal or disqualification under 28 U.S.C. §§ 144 and 455(a) and (b)(1).  The court addresses each basis for recusal in turn, beginning with § 144.

### A.    Relief under § 144

The statute provides that if a party "makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."  28 U.S.C. § 144.  "When an affidavit of personal bias or prejudice is filed pursuant to section 144, a trial judge is not required immediately to recuse . . . .  Although the trial judge may not pass upon the truth of the matters asserted . . . the trial judge must pass upon the legal sufficiency" and timeliness of the affidavit.  United States v. Kelley, 712 F.2d 884, 889 (1st Cir. 1983) (emphasis added).

As for timeliness, the affidavit "shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time," and the affidavit "shall be accompanied by a certificate of counsel of record stating that it is made in good faith."  Id.  "Since formal terms of court were long ago abolished, the literal ten-day requirement no longer applies.  Instead, courts have simply required a party to

---

review that the recusal statutes demand, however, the court cannot summarily deny Brown's motion as the government requests.

[10] See March 28, 2022 Order in First Cir. Appeal No. 21-1265.

exercise reasonable diligence in filing an affidavit after discovering facts that show bias."

Pomeroy v. Merritt Plaza Nursing Home, Inc., 760 F.2d 654, 658 (5th Cir. 1985).

In this circuit, affidavits under § 144 must be filed "at the earliest moment after [acquiring] knowledge of the [relevant] facts." In re Abijoe Realty Corp., 943 F.2d 121, 126 (1st Cir. 1991) (quoting United States v. Owens, 902 F.2d 1154, 1156 (4th Cir. 1990) (alteration in original); see also In re United Shoe Machinery Corp., 276 F.2d 77, 79 (1st Cir. 1960) ("[A] party, knowing of a ground for requesting disqualification, can not be permitted to wait and decide whether he likes subsequent treatment that he receives.").

Petitioner learned of allegedly disqualifying facts in September 2020.  Rather than move to recuse at that point – before the court held a second day of evidentiary hearings, scheduled and held additional oral argument, and ruled on the petition – the petitioner waited over a year to file her affidavit and recusal motion in December 2021, a month after the Court of Appeals denied her request for a certificate of appealability.  Courts have found delays in this range (approximately 15-months), and indeed, much shorter delays, untimely.  See, e.g., Baldi v. Brown, No. CIV.04-206-SM, 2004 WL 2030281, at *1 (D.N.H. Sept. 13, 2004) (McAullife, J.) (two-month delay untimely); United States v. Sykes, 7 F.3d 1331, 1339 (7th Cir. 1993) ("Two months after the allegedly prejudicial statement is certainly not 'at the earliest possible moment' after discovery of the prejudice."); Green v. Branson, 108 F.3d 1296, 1305 (10th Cir. 1997) (less than two month delay untimely); accord United States v. Bravo Fernandez, 792 F. Supp. 2d 178, 183 (D.P.R. 2011) (finding a recusal motion filed after the conclusion of trial "presumptively untimely"); Armenian Assembly of Am., Inc. v. Cafesjian, 783 F. Supp. 2d 78, 88 (D.D.C. 2011), aff'd, 758 F.3d 265 (D.C. Cir. 2014) (recusal motion filed after judge issued findings of fact and conclusions of law following a bench trial was untimely).

Petitioner seems to concede that her recusal motion is untimely, but argues that there was good cause for the delay because she had to wait for her prior counsel to withdraw and she "needed to wait for evidence from the Federal Public Defender's office."  Neither excuses the delay.  If the petitioner had allegedly disqualifying information while she was represented by counsel, her counsel should have moved to recuse or disqualify at the time she learned of the information.  And as for "evidence" from the Federal Defender's office, according to the petitioner's affidavit, that evidence consisted of an email response that the office "declined to respond," so its relevancy to recusal is unclear at best.  More importantly, the petitioner fails to explain why she waited until December 8, 2021 to request information from the Federal Defender.  In any event, allegedly needing to "verify the facts necessary" to file a recusal motion does not constitute good cause to excuse a lengthy delay between acquiring information and filing the motion.  Bravo Fernandez, 792 F. Supp. 2d at 183.  Such "new and conveniently acquired interpretation of events long past, supposedly prompted by recent events, is not the kind of 'discovery of new facts' that justifies an otherwise untimely submission."  United States v. Int'l Bus. Machines Corp., 475 F. Supp. 1372, 1378 (S.D.N.Y. 1979), aff'd sub nom. In re Int'l Bus. Machines Corp., 618 F.2d 923 (2d Cir. 1980).

Some courts utilize other factors "to determine whether a motion for disqualification is timely filed," including "the extent of movant's involvement in the proceeding,"[11] "whether recusal would result in waste of judicial resources," and whether the motion was made after entry of judgment.  In re Medrano Diaz, 182 B.R. 654, 658 (Bankr. D.P.R. 1995).  All of these factors support the conclusion that the petitioner's motion is untimely.  Because the petitioner's recusal

---

[11] The court notes that the petitioner was, without question, the criminal defendant most actively involved in her trial and post-trial defense that this court has observed in nearly 15 years on the bench.

motion and affidavit are untimely and she has not shown good cause for the delay in filing, the court denies the motion to the extent it seeks relief under § 144 and will not assign the matter to another judge.

**B.    Relief under § 455**

Turning to the petitioner's § 455 relief, that aspect of her recusal motion is arguably untimely as well.  See United States v. Bravo Fernandez, 792 F. Supp. 2d 178, 182 (D.P.R. 2011) ("Both sections 455 and 144 require that the party moving for recusal of the judge raise the issue at the earliest moment after acquiring knowledge of the facts providing a basis for disqualification.") (quotation marks omitted); United States v. Kelly, 519 F. Supp. 1029, 1050 (D. Mass. 1981) (adopting reasoning of other courts that timeliness requirements of § 144 are also applicable to § 455).  "Litigants must raise a claim for disqualification of a district court judge after learning of the grounds for disqualification, and certainly may not wait and see how the court rules before acting," which appears to be what the petitioner did here.  In re Lupron Mktg. & Sales Pracs. Litig., 677 F.3d 21, 37 (1st Cir. 2012).  Nevertheless, because § 455 does not explicitly include a timeliness requirement, the court addresses the merits of the petitioner's recusal motion under that statute.  Moreover, unlike § 144, which allows the potentially disqualified judge to preliminarily review the affidavit for timeliness and sufficiency, but defers the merits of a timely and sufficient affidavit to another judge, "the mere filing of a recusal motion under section 455 [does not] require[] that the motion be determined by another judge." El Fenix de Puerto Rico v. M/Y JOHANNY, 36 F.3d 136, 142 n.8 (1st Cir. 1994); see also United States v. Martorano, 620 F.2d 912, 920 (1st Cir. 1980) ("We think the mere fact that a judge entertains a motion for new trial in a case over which he presided initially does not reasonably call into question his impartiality. Indeed, we have indicated it may often be

6

advantageous to have the original judge continue on a case because of his familiarity with earlier proceedings.").

Under § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  Recusal is required under § 455(a) if there exists "facts that would prompt a reasonable question in the mind of a well-informed person about the judge's capacity for impartiality in the course of the trial and its preliminaries."  In re Bulger, 710 F.3d 42, 46 (1st Cir. 2013).  Recusal is also required where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  28 U.S.C. § 455(b)(1).  A decision on a recusal motion "must reflect not only the need to secure public confidence through proceedings that appear impartial, but also the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking."  In re Allied-Signal, Inc., 891 F.2d 967, 970 (1st Cir. 1989).  "[J]udges should not 'recuse themselves lightly.'"  United States v. Cruzado-Laureano, 527 F.3d 231, 239 (1st Cir. 2014) (citation omitted).  Indeed, "[j]udges have a duty to sit unless some compelling reason for recusal exists."  United States v. Caramadre, 807 F.3d 359, 374 (1st Cir. 2015).

Petitioner asserts the following six grounds for recusal or disqualification:  (1) this court's actual or apparent ex parte communications with the Federal Public Defender's office; (2) this court's actual or apparent harassing, abusive, prejudiced, intimidating, coercive, and biased behavior toward the petitioner's former counsel; (3) this court's allegedly lenient treatment of the prosecution; (4) this court's actual or apparent "suppression" of the petitioner's testimony at the September 25, 2020 evidentiary hearing on her § 2255 petition; (5) this court's refusal to accept the petitioner's "unrebutted" testimony; and (6) this court's allegedly retaliatory

decision to grant the government's motion to rescind[12] the petitioner's bail in the petitioner's

underlying criminal case.[13]

**Grounds 4 through 6**.  The court summarily rejects several of these contentions.  First,

the petitioner is plainly incorrect that the court "suppressed" her testimony at the September 25

hearing.  The court permitted her to testify at length at this hearing, which was the third time the

petitioner provided live sworn testimony in connection with her criminal prosecution and post-

conviction requests.  The court actively questioned the petitioner during her testimony and gave

her counsel the opportunity to explore any lines of questioning that she wished.  There was no

actual or apparent suppression of testimony, and the petitioner conceded as much in her affidavit.

See doc. no. 38, at ¶ 41 ("I presented my evidence as a witness and defeated the prosecutor's

claim that I had just come up with a novel defense post-appeal.").

Second, the court's alleged refusal to credit the petitioner's testimony is not a valid basis

for recusal.  "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality

motion."  United States v. Laureano-Perez, 797 F.3d 45, 74 (1st Cir. 2015) (quoting United

States v. Liteky, 510 U.S. 540, 555 (1994)).  The court, as the factfinder for the petitioner's

§ 2255 petition, was entitled to assess her credibility and assign a weight to her testimony

(which, contrary to the petitioner's belief, was not "unrebutted").[14]  The First Circuit Court of

Appeals has repeatedly recognized that "[a]dverse attitudes toward a party or witness formed on

---

[12] See Motion to Rescind Bail Order (doc. no. 124) in case no. 16-cr-21-JL.

[13] Doc. no. 37, at 5.

[14] See Order Denying Motion to Amend Judgment (doc. no. 20), at 4 (reiterating that the
petitioner's testimony was neither unrebutted nor corroborated by other testimony).

the basis of the evidence before the court do not constitute disqualifying bias and prejudice." In Re Cooper, 821 F.2d 833, 838 (1st Cir. 1987); see also Kelley, 712 F.2d at 889-90.

Third, like the court's credibility determination, its decision to grant the government's motion to rescind the petitioner's bail and set a self-surrender date in the criminal case is not disqualifying. See Laureano-Perez, 797 F.3d at 74. The court sentenced the petitioner in June of 2018. It suspended the imposition of the petitioner's sentence and allowed her to remain released not only throughout the appeal of her conviction, but also during the pendency of her § 2255 petition and the appeal of the court's denial of that petition. After the Court of Appeals denied her request for a certificate of appealability, the prosecution moved to rescind her release. The court granted the motion, but did not issue an arrest warrant, and instead ordered the petitioner to self-surrender in January 2022. No objective observer would view this conduct as retaliatory. While the petitioner opposed the government's motion to rescind her bail, the court's ruling was not in retaliation for her opposition. It simply disagreed with the contentions in her opposition and concluded that it was the appropriate time to rescind her release, since petitioner had exhausted her appeal options. If anything, the court's grant of release pending appeal and further grant of release during the pendency of her § 2255 petition, and her appeal of that proceeding, was unduly accommodating to the petitioner.

**Grounds 1 through 3**. Turning to the petitioner's other grounds, the court finds that none of them warrant recusal for the following reasons. Petitioner alleges that during the February 2021 oral argument on her petition, she "thought she heard" the court say that he had contacted petitioner's trial counsel to inquire about pre-trial expert consultation. She argues that such inquiry, if it occurred, was a disqualifying ex parte communication. Petitioner is correct that the court used the word "inquire" when referring to whether or not her trial counsel

consulted with an expert.[15]  The court's "inquiry," however, involved re-reading the entire

record, including the transcript of the February 2018 hearing where the petitioner's trial counsel

testified and inquiring of witnesses and counsel during the September 2020 evidentiary hearings.

Even though it was the petitioner's burden to show that her trial counsel did not in fact consult

with an expert, the court reviewed the transcripts on its own accord to verify that trial counsel

indeed did not testify about expert consultation.  Thus, the court's best memory is that it did not

acquire, through ex parte communications with the Federal Defender's office, personal

knowledge of a disputed evidentiary fact.  See § 455(b)(1).  Nor would the court's statement

("frankly, I inquired about it, and the record is what it is at this point") "prompt a reasonable

question in the mind of a well-informed person about the judge's capacity for impartiality."

Bulger, 710 F.3d at 46.

Petitioner next takes aim at the court's conduct toward her former counsel.  At the outset,

the court notes that the petitioner makes no allegations regarding the court's treatment of her trial

counsel, a team of Federal Defenders who defended the case quite ably.  This claim involves her

post-trial counsel under § 2255, appointed for her by this court.  She alleges that this conduct

prevented her post-trial counsel "from thoroughly investigating and litigating on behalf of her

client."[16]  Petitioner baldly labels the court's conduct as "harassing, abusive, prejudiced, or

biased" as well as intimidating and coercive, but does not explain how such conduct prevented

counsel from investigating and litigating on petitioner's behalf.  Petitioner completely

mischaracterizes the court's conduct.

---

[15] See Oral Argument Transcript (doc. no. 19) at 52.

[16] Doc. no. 37, at 5.

In fact, the court afforded petitioner's counsel every opportunity to litigate her § 2255 petition.  It allowed counsel to file an amended petition, approved funds to hire and depose a post-trial expert in grants and grant accounting, and heard two days of testimony and lengthy oral argument.  When, prior to the second day of the evidentiary hearing, the court questioned the petitioner's counsel about her desire to have the petitioner testify (when she had previously told the deputy clerk that her only witness would be the expert), counsel accused the court of "attacking" her.  Counsel became upset and the court suspended the start of the hearing.  It then gave counsel the opportunity to postpone the hearing entirely.  Counsel regained her composure and told the court that she (and the petitioner) wished to go forward with the hearing that day.  The court's exchange with counsel was contentious, but in no way did it become harassing, abusive, coercive or intimidating, and the petitioner does not explain otherwise.

Indeed, at the start of the February 2021 oral argument, the court informed the petitioner of the details of its exchange with her counsel, explained that it had spoken with counsel after the exchange to be sure that counsel was comfortable proceeding before the court, and explained that counsel told the court that there was no problem going forward.  The court then asked the petitioner if she also felt comfortable proceeding before this court.  She answered: "I have no reservations [about proceeding before this court], and I appreciate that you've been transparent about the whole thing, your Honor."[17]  Petitioner now alleges that she misled the court with her answer and untruthfully told the court that she appreciated its transparency.  She further claims that the court "chastised" her lawyer during oral argument by asking her more questions than it asked the prosecution.

_____

[17] Doc. no. 19, at 4.

"As a general rule, bias against the party must be shown and it is insufficient to rely on "clashes between court and counsel" as the basis of a disqualification motion.  In re Cooper, 821 F.2d 833, 838 (1st Cir.1987) (per curiam).  Similar to judicial rulings, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties or their cases" rarely validate recusal.  United States v. Cruz-Mercado, 360 F.3d 30, 36 (1st Cir. 2004) (quoting Liteky, 510 U.S. at 555); see also Panzardi-Alvarez v. United States, 879 F.2d 975, 984 (1st Cir. 1989) (generally "[a] court's disagreement—even one strongly stated—with counsel over the propriety of trial tactics does not reflect an attitude of personal bias against the client").  Such remarks may support a recusal motion "if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."  Id.  But "opinions formed by the judge based on facts introduced or events occurring" in the course of prior or current proceedings are not a basis for recusal absent such "deep-seated favoritism or antagonism."  Liteky, 510 U.S. at 555.

The court's alleged unfavorable treatment of petitioner's counsel during this proceeding was based strictly on facts or events occurring in the underlying proceeding, not extrajudicial sources.  More importantly, the court's treatment of counsel does not reveal a deep-seated favoritism for the government or antagonism toward the petitioner.  It instead reflects critical, but respectful, lines of questioning of both the petitioner and her counsel in a highly contested § 2255 litigation in which she held the burden of proof.[18]  Such routine judicial inquiry into, and even disagreement with, one party's position in a case does not reflect – in the eyes of an objective observer – a personal bias against that party or provide a valid basis for recusal or

---

[18] Again, the petitioner makes no allegations regarding the court's treatment of her trial counsel; this request for relief involves her post-trial habeas counsel.

disqualification.[19]  See Liteky, 510 U.S. at 555-56 ("Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration--remain immune.") (emphasis added).

Decisions from the First Circuit and other courts support this conclusion.  In those cases, far more severe or hostile judicial conduct than what has been alleged here did not justify recusal.  See, e.g., Caramadre, 807 F.3d at 374 (finding no bias even though judge's statements, "taken collectively, show that the [judge] did not think much of [the defendant's] plea-withdrawal motion. Admittedly, the court couched its findings and conclusions in blunt language. But trial judges are not required either to mince words or to sugar-coat their views. Blunt language, without more, does not translate into a showing of judicial bias.") (citation omitted), cert. denied, No. 15-1269, 2016 WL 1545250 (May 23, 2016); United States v. Ofray–Campos, 534 F.3d 1, 32–34 (1st Cir. 2008) (finding no judicial bias where judge interrupted counsel during opening and closing statements, told counsel to "shut up" during a sidebar conference, and made demeaning remarks about counsel's performance); United States v. Rodríguez–Rivera, 473 F.3d 21, 26–29 (1st Cir. 2007) (finding no judicial bias where judge reprimanded counsel in open court, commented unfavorably on counsel's objections, and "made a series of unpredictable and adverse rulings" against the defendant); United States v. DiPina,

---

[19] While the court at times cast doubt on defense counsel's arguments, it never questioned her performance.  In fact, the court agreed with the petitioner that her counsel had done a "splendid job" and complimented her "very zealous" advocacy on the petitioner's behalf.  Doc. no. 19, at 2-3.

230 F.3d 477, 486 (1st Cir. 2000) (judge's comments at sentencing that defendant's legal arguments were "worthless" and remarks on his "criminal conduct" did not warrant disqualification); but see Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co, 559 F.3d 888, 904–05 (8th Cir. 2009) (recusal appropriate where the court directed profanities at plaintiffs or plaintiffs' counsel over fifteen times, denied plaintiffs a meaningful opportunity to respond following their opponent's lengthy presentation, and misconstrued the language of its own discovery orders and dismissed plaintiffs' attempt to explain those orders).

Petitioner also seeks recusal based on the court's "efforts to avoid and delay findings of prosecutorial misconduct" and its failure to hold prosecutors "to an acceptable standard of candor to the tribunal in statements of law and fact and production of evidence."[20]  As for the former allegation, the court presumes the petitioner is referencing a different matter he is presiding over that does not involve the petitioner, but involved her former post-trial counsel. Petitioner does not specify what efforts the court has taken to avoid and delay findings of prosecutorial misconduct in that case, or explain how those alleged efforts show bias or impartiality in her case.  In any event, after allowing for extensive briefing, evidentiary hearings, and oral argument, the court granted the defendant a new trial in that other matter.[21]  The petitioner's allegation that it avoided or delayed holding the government accountable for its conduct is thus completely unfounded.

As for the allegation that the court failed to hold prosecutors in this case to an acceptable standard of candor to the tribunal, the petitioner again does not identify the court's alleged failures or explain what the "acceptable" standard of candor would be under these

---

[20] Doc. no. 37 at 5.

[21] See Memorandum Order (doc. no. 268) in 18-cr-00192-JL.

circumstances.[22]  Moreover, the record contains no instances of the court failing to hold the

prosecutors in this matter to an acceptable standard of candor, nor instances of the court

declining the defense's requests to do so.  The court considered all arguments raised by the

defense in this post-trial habeas litigation, including any arguments relating to the prosecution's

actions during trial.

**Additional grounds**.  Petitioner uses the remainder of her affidavit to recount the

procedural history of this litigation,[23] certain strategic conversations with her attorney,[24] and her

views as to why the court's ruling was incorrect,[25] none of which supports a recusal request.

Petitioner also offers several other conclusory allegations of bias or impartiality, all

allegedly relayed to her by her former attorney.  Counsel took no action to either corroborate the

statements attributed to her by the petitioner, or to seek recusal based thereon.  In fact, at a

procedural hearing after the petitioner filed her recusal motion, the court asked if counsel had

any information about the court that required her to withdraw as counsel.  The court had the

following exchange with the petitioner's former counsel:

> THE COURT: But let me ask this, though: Okay. So, are there any other grounds
> that you'd like to withdraw besides your client's desire to proceed pro se?
>
> MS. BROWN: No. That is the only grounds.

---

[22] This argument is inadequately developed and arguably should be disregarded and deemed
waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (The court is "free to
disregard arguments that are not adequately developed" in the parties briefing, and may deem
waived "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed
argumentation.").  The court nevertheless considers it and independently combed the record –
despite the petitioner failing to cite to one concrete example in the record – for evidence of the
alleged "accountability" failures by the court.

[23] See, e.g., doc. no. 38, at ¶¶ 6, 8, 19-22, 31-32, 41, 54-55, 62-63, 80-81, 92-93, 97-99, 101.

[24] Id. at ¶¶ 10, 12-14, 18, 24, 25, 30, 41, 52-53, 56, 82-85.

[25] Id. at ¶¶ 42, 73-79, 83.

THE COURT: All right. I want to be clear. Are there any issues pertaining to your working relationship with the prosecutor's office in this case that create a need for you to withdraw from this case?

MS. BROWN: No, your Honor. It was mostly at the behest of Ms. Brown, who wanted to represent herself, and that's why.

THE COURT: Are there any grounds <u>based on judicial conduct in this case</u> that are grounds for you to withdraw in this case?

MS. BROWN: I would prefer not to comment on that, because Ms. Brown -- <u>I don't know of any, would be my short answer</u>, but I know Ms. Brown has raised some issues regarding that.

THE COURT: Of course.

MS. BROWN: And I don't want to sort of step on that litigation one way or the other and voice any position on that litigation. My sole reason for withdrawing is that she wants to represent herself, and she wants to file pleadings on her own behalf without running afoul of the rules that she can't do that when you're represented by counsel. That's the only reason.

(Emphasis added). For the sake of completeness, the court nevertheless briefly addresses these remaining allegations in the petitioner's <u>pro se</u> affidavit.

Petitioner first alleges that her counsel told her that it was unlikely that a "Catholic judge" would rule in favor of a homosexual defendant.[26] Next, she alleges her counsel told her that this court had a "propensity to listen and give more weight to male arguments than female arguments."[27] She also contends that her counsel expressed frustration with this court's alleged practice of holding "off-the-record chambers conferences to preview" arguments.[28] Lastly, the

---

[26] Doc. no. 38, at ¶ 26.

[27] <u>Id.</u> at ¶ 27.

[28] <u>Id.</u> at ¶ 29.

petitioner argues that because the undersigned was an Assistant United States Attorney before becoming a judge, he "identified" with the prosecutors and held bias against the defense.[29]

None of these allegations are sufficient to show actual bias or the appearance of bias to require recusal because they consist of second-hand "rumors, innuendo, and erroneous information," not "objective facts." In re United States, 666 F.2d 690, 695 (1st Cir. 1981) (courts must consider whether the actual facts "provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality"). "No permissible reading of subsection 455(a) would suggest that Congress intended to allow a litigant to compel disqualification simply on unfounded innuendo concerning the possible partiality of the presiding judge." El Fenix de Puerto Rico, 36 F.3d at 140. Indeed, judges "must avoid yielding in the face of unfounded insinuations. A party cannot cast sinister aspersions, fail to provide a factual basis for those aspersions, and then claim that the judge must disqualify herself because the aspersions, ex proprio vigore, create a cloud on her impartiality." In re United States, 158 F.3d 26, 35 (1st Cir. 1998) (citing FDIC v. Sweeney, 136 F.3d 216, 219 (1st Cir. 1998) (per curiam)). Simply put, "speculation and surmise" and a party's "subjective beliefs" about this court's impartiality are irrelevant to the question of recusal. Id.; Allphin v. United States, 758 F.3d 1336, 1344 (Fed. Cir. 2014).

Moreover, "courts have consistently held that membership in a church does not create sufficient appearance of bias to require recusal." Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 660 (10th Cir. 2002). The undersigned's affiliation with the Catholic

---

[29] Id. at ¶ 16.

church therefore does not support a finding of the appearance of bias toward the petitioner.[30]

This court's comments on the parties' arguments or signaling as to rulings similarly does not

objectively show bias. "Judges often express an initial leaning even before anyone speaks or

right in the middle of an argument. It is then up to dissatisfied counsel to dissuade the judge

from that initial leaning." Obert v. Republic W. Ins. Co., 398 F.3d 138, 145 (1st Cir. 2005), as

revised (Mar. 24, 2005). Finally, this court's "prior work for the Department of Justice . . . does

not raise a reasonable question as to [his] impartiality." Allphin, 758 F.3d at 1344. A "mere

prior association [does not] form a reasonable basis for questioning a judge's impartiality," or

show, as the petitioner speculates, that he "identifies" with the prosecution. Maier v. Orr, 758

F.2d 1578, 1583 (Fed. Cir. 1985).


III.    **Conclusion**

    For the reasons stated above, the petitioner's motion to proceed pro se[31] is GRANTED

and her motion for retroactive recusal or disqualification[32] is DENIED.


    **SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge


Dated:   May 10, 2022

---

[30] This court was completely unaware of the petitioner's sexual orientation until she noted it in her affidavit, either having never learned of it, or forgotten it. And of course, it makes no difference to the court.

[31] Doc. no. 36.

[32] Doc. no. 37.

cc:    Suzanne E. Brown, pro se
       Seth R. Aframe, AUSA